IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF | ) | |
| | ) | 07 B 21545 |
| CALVITA J. FREDERICK, | ) | |
| | ) | CHAPTER 13 |
| DEBTOR | ) | |

**REPLY TO DEBTOR'S ANSWER TO MOTION
FOR RELIEF FROM AUTOMATIC STAY**

NOW COMES Creditor, DLJ Mortgage Capital, Inc., ("DLJ") and Select Portfolio Servicing, Inc. ("SPS"), loan servicer, by and through their attorneys Michael J. Weik and Craig C. Smith and states as follows:

1. DLJ/SPS's Motion for Relief from Stay ("DLJ's Motion") filed on February 13, 2008, alleged that Debtor had failed to provide adequate protection.

2. Debtor's Answer fails to meet the substance of DLJ's Motion or satisfy debtor's burden to demonstrate adequate protection as follows:

**A.     Debtor has not established that she has made post-petition payments.**

3. At ¶¶5 & 6, DLJ/SPS allege Debtor failed to make "any" post-petition payments, she was in default for the period December through February in the amount of $8,261.35 and that the default amount includes 1 monthly payment of $2,647.53 and 2 monthly payments of $2,806.91. Debtor's Answer denies these allegation and demands "strict proof thereof" without further comment.

4. Presumably, Debtor denied ¶5--that she hasn't made "any" post-petition payments-- because on the date DLJ's Motion was first presented she tendered a payment in court. Although Debtor's Answer may be technically correct because she did tender one payment, since the last court date she has not made any other payments.

1

5. Moreover, Debtor's Answer to ¶6 is clearly inadequate and disingenuous. At ¶6, DLJ/SPS alleged Debtor was in default for December 2007 through February 2008, three payments, in an amount equal to $8,261.35. Debtor's general denial is inadequate as she fails to address either the number of missed payments or amount due. Her failure is not accidental since she only tendered the one payment in court and currently remains in default for three payments.

**B.   Debtor has not established she is providing adequate protection by real estate taxes.**

6. At ¶¶8-9, DLJ alleged Debtor has not made pre-petition or post-petition real estate tax payments. Although Debtor admits she is "ultimately" responsible for real estate taxes, she tries to deflect attention by claiming real estate taxes are part of her monthly payment and "the mortgage company has taken on the responsibility to pay taxes…"

7. Debtor's Answer is inaccurate and insufficient. First, Debtor has made only one post-petition payment rather than the four that should have been made as of the date of this reply. Second, since her Petition was filed at least one tax bill has come due. Third, since the Judgment of Foreclosure was entered, DLJ has had to advance ten thousand three hundred seven and 51/100 dollars ($10,307.51) in pre-petition tax payments and five thousand one hundred fifty-three and 76/100 dollars ($5,153.76) in post-petition tax payments.

**C.   Debtor has not established she is providing adequate protection by paying casualty insurance.**

8. At ¶¶ 8 & 11, DLJ alleged that Debtor has not maintained or made payments for casualty insurance for the subject property.

9. Debtor admits she has not maintained insurance. However, as with real estate taxes, she claims that DLJ is "responsible" for insurance and that her post-petition payments include an amount for casualty insurance. Debtor's Answer is inaccurate and insufficient for a

2

number of reasons. First, Debtor has only made one post-petition payment rather than the four that should have been made as of the date of this reply. Second, contrary to her suggestion, the payment she did make did not include an amount for casualty insurance. Third, the Debtor, not the "mortgage company", is "responsible" for maintaining insurance. Fourth, because Debtor has not maintained insurance or made any insurance payments, DLJ had to advance four thousand two hundred fifty-one dollars ($4,251.00) during the time between the judgment of foreclosure and her Petition and three thousand two hundred ninety-one dollars ($3,921) in post-petition insurance payments.

**D.   Debtor has acted in "bad faith" and otherwise failed to establish adequate protection.**

10.   At ¶¶ 12, DLJ alleged the amount of the debt was actually much more than Debtor has scheduled. DLJ alleged that on February 6, 2007, more than one year ago, it had obtained a judgment of foreclosure and sale in the amount of $568,377.20, almost $100,000.00 more than the total debt scheduled by Debtor. The Judgment was entered pursuant to DLJ's motion for summary judgment and Debtor did not seek further relief from the Judgment. With simple judgment interest from February 2007 alone, the amount of the debt would currently exceed $600,000.00.

11.   Debtor's Answer admits entry of the judgment and the judgment amount. Debtor suggests however that she received a "pay-off letter" with the amount scheduled; an amount Debtor knew to be wrong and subject to correction/confirmation.

12.   The difference between the judgment and the debt amount scheduled by Debtor is significant in part because she scheduled the value of the property at $500,000.00. If her valuation is correct DLJ is not adequately protected.

3

13. The difference in the amount of the debt is otherwise important since her income and funds available for plan payments are clearly insufficient to meet her obligations. Indeed, Debtor admits as much in response to ¶17, when she admits her plan payment would have to increase if the arrearage is as DLJ alleges and the judgment demonstrates.

14. Debtor's behavior has otherwise been inappropriate.

15. At the 341 Meeting of Creditors she refused to respond to DLJ's questions regarding income and the debt such that the trustee terminated the meeting suggesting DLJ schedule a Rule 2004 examination. With agreement of the Debtor and her counsel, DLJ did schedule an examination and sent a letter confirming the meeting and requesting documents relating to income, expense, the amount of the debt and the valuation of the subject property. (Exhibit A). Unfortunately, on the morning of the examination, Debtor unilaterally cancelled the examination claiming she did not have the records requested, records she would have used to prepare her schedules in this matter.

## CONCLUSION

Debtor has failed to demonstrate that DLJ is adequately protected. DLJ is entitled to relief from the stay to continue with mortgage foreclosure proceedings.

                                        Respectfully Submitted,
                                        SELECT PORTFOLIO SERVICING, INC. and
                                        DLJ MORTGAGE CAPITAL, INC.

                                        _s/Michael J. Weik_____
                                        One of Their Attorneys

Michael J. Weik #3125782
Craig C. Smith #6238126
Smith & Weik, LLC
19 S. LaSalle St., Suite 601
Chicago, IL 60603
312-895-4560

# EXHIBIT A

# Smith & Weik LLC
# Attorneys at Law

19 S. LaSalle Street
Suite 601
Chicago, Illinois 60603
Main Tel. (312) 895-4560
E-fax (877) 831-3973
www.sww-law.com

Michael J. Weik
mweik@sww-law.com
Direct Tel.: (312) 443-9543

February 29, 2008

Glenda J. Gray
330 N. Wabash Ave. Suite 2618
Chicago, IL 60611

Re:   *Calvita J. Frederick*
      *07 B 21545*

Dear Ms. Gray:

This will confirm your agreement to produce Ms. Frederick on March 10, 2008 at 11:00 a.m. for a Rule 2004 Examination regarding questions concerning her income; proposed plan payments; the amount of the mortgage debt; and the valuation of the property commonly known as 4753 South Dorchester Avenue. As discussed and agreed, at this time, we will not go into the detail regarding issues that have been or may be raised in her separate pending civil action. All rights to pursue further discovery in this matter and the separate civil action, including deposing Ms. Frederick, are expressly reserved.

In addition, we are requesting that Ms. Frederick produce the following records:

1. Any documents or records which identify, refer to, relate to or concern any monies paid to Debtor or on Debtor's behalf by Magnolia Spice Teas, Inc. for the period from January 1, 2007 through and including the date of the examination.
2. Any and all income and expense records for Magnolia Spice Teas, Inc. for the period from January 1, 2007 through the date of the examination.
3. Any documents or records which identify, refer to or concern any income earned and expenses paid by Calvita J. Frederick & Associates for the period January 1, 2007 through the date of the examination.
4. Any and all documents or records that were reviewed, referred to or relied upon in calculating the monthly income she scheduled in the bankruptcy proceeding. This should include any "historical" or other data that was utilized in arriving at the monthly income figures, including any records, documents or information Debtor mentioned or referred to during the first meeting of creditors.



# Michael J. Weik

Michael J. Weik<br>Page 2 of 2

5. Any and all documents or records that were reviewed, referred to or relied upon in calculating the amount of the secured claim referred to in Schedule A and mortgage identified in Schedule D that is secured by the property commonly known as 4753 South Dorchester, Chicago, IL.

6. Any and all documents or records that were reviewed, referred to or relied upon in calculating the current value of the Debtor's interest in the property commonly known as 4753 South Dorchester Ave as set forth in Schedules A and C, including any appraisals, broker's opinions of value or market analyses.

7. Any and all federal and state tax returns for Magnolia Spice Teas Inc., for the years 2004, 2005, 2006, and 2007 including any schedules, forms or records reflecting payments made to or on behalf of Debtor.

8. Any and all personal bank records, including checking, savings, money market or other accounts for the period January 1, 2007 through the present, including the checking account at TCF Bank, listed on Schedule B. This should include monthly statements, cancelled checks or other records reflecting deposits, withdrawals and other transactions.

9. Any and all records that reflect payments made pursuant to the mortgage listed on Schedule D. This should include copies of any payments made for the period from January 1, 2000 through the date of the examination.

10. Any and all records that refer to, relate to, or identify any casualty insurance for the property commonly known as 4753 South Dorchester Ave, Chicago, Illinois.

11. Any and all records which refer to relate to or concern real estate taxes for the property commonly known as 4753 South Dorchester Ave, Chicago, Illinois, including any records reflecting payments made by Debtor.

12. Any and all judgments of foreclosure entered in the matter of DLJ Mortgage Capital Inc., v. Frederick et al, 2006 CH 2321, identified in Debtor's Amended Schedule of Financial Affairs. In addition, please provide any prior foreclosure judgments entered against Debtor and in favor of DLJ Mortgage Capital, Inc.

13. Any and all contracts or written offers received by Debtor during the period January 1, 2005 through November 16, 2007 for the property commonly known as 4753 South Dorchester Ave, Chicago, Illinois.

I would like to have the examination take place at 10 S. LaSalle Street, Suite 3702, Chicago, Illinois. If you have any questions or comment regarding any of the above, please contact me at your earliest convenience.

Sincerely,

Michael J. Weik